895 P.2d 564

**Yolanda DE LOS SANTOS,
Plaintiff–Appellant,**

v.

**J.R. SIMPLOT COMPANY, INC.,
Defendant–Respondent.**

**No. 20760.**

Supreme Court of Idaho,
Boise, February 1995 Term.

May 23, 1995.

Ringert Clark Chtd., Boise, for plaintiff-appellant. David Hammerquist argued.

J.R. Simplot Legal Division, Boise, for defendant-respondent. David E. Spurling argued.

TROUT, Justice.

## I.

## BACKGROUND

This is a *quid pro quo* sexual harassment case. The appellant, Yolanda De Los Santos (De Los Santos), was employed for several years by the J.R. Simplot Company (Simplot). She maintains that some time in March of 1991, Joe Vasquez (Vasquez), another employee at Simplot, made a sexual advance toward her which she spurned. As a result, she asserts that Vasquez also threatened to get back at her for not complying with his sexual requests.

Several months later, during the "graveyard" shift on July 15, 1991, an employee at the Simplot plant contacted the supervisor then on duty, Vasquez, in an attempt to locate De Los Santos. Vasquez was unable to find her and, after checking with the gate guards, discovered that she had left work approximately three and one half hours early. It was then discovered that she had not changed her time sheet to reflect her early departure, so she was paid for the time she was not at work. Further investigation disclosed that in the previous six weeks De Los Santos had done the same thing on five other occasions and each time had not corrected her time record. In her case this was particularly serious since she held the position of time keeper and was responsible for the time records of a number of other employees, in addition to herself. Vasquez then reported these violations to the supervisor who supervised both De Los Santos and Vasquez, Carlos Puga (Puga). Puga then asked for input from his supervisors as to what should be done. The record reflects that Dana Schuck, Simplot's personnel director, recommended terminating De Los Santos for walking off the job without permission and for falsifying time records.

On July 18, Puga met with De Los Santos and terminated her employment. Following the July 18 meeting, De Los Santos contacted the union representative for the plant and joined the union. Immediately thereafter, De Los Santos filed a formal grievance pursuant to the collective bargaining agreement and requested reinstatement. In this written grievance, she claimed the failure to correct her time card was an oversight and was not intentional. She also asserted in her defense that she had permission to leave early on certain clean-up nights. De Los Santos did not mention any sexual harassment problems with Vasquez or Puga in her grievance.

Simplot denied De Los Santos' request for reinstatement. Rather than taking her case to arbitration pursuant to the collective bargaining agreement, De Los Santos formally withdrew the grievance in September, 1991. She then filed this *quid pro quo* sexual harassment claim in the district court, and for the first time argued that her firing was a retaliatory discharge. She alleged that her firing for falsifying time cards and leaving work without permission was pretextual and that the true reason for her firing was that she had rebuffed the alleged advance by Vasquez four months prior to her termination, and that Vasquez convinced his friend, Puga, to fire her in order to cover up the incident.

The case went to trial and at the conclusion of De Los Santos' case the district court entered a directed verdict against De Los Santos, finding that she had not proven a cause of action against Simplot. During the course of the trial, De Los Santos attempted to present certain evidence which she felt supported her sexual harassment claim and she then made offers of proof when the evidence was not admitted in. These evidentiary issues are now before us on appeal.

## II.

## ISSUES PRESENTED

De Los Santos presents the following issues for our determination on appeal:

a) Whether the district court erred in disallowing evidence of other sexual harassment that was not directly related to De Los Santos' case.

b) Whether the district court erred in ruling that hostile working conditions are irrelevant in this action.

c) Whether the district court erred in excluding evidence of the relationship between Vasquez and Puga.

d) Whether the district court erred when it ruled that Simplot may terminate an employee even if sex discrimination may be one motivation for the termination.

e) Whether the district court erred in excluding evidence of disparate treatment by the main perpetrators.

f) Whether the district court erred when it ruled that emotional distress is not an element of damage in this case.

Simplot has made a request under I.A.R. 11.1 for attorney fees on appeal.

## III.

### STANDARD OF REVIEW

■ One who moves for a directed verdict admits the truth of the adverse evidence and every inference that may legitimately be drawn therefrom in the light most favorable to the opposing party. *Stephens v. Stearns,* 106 Idaho 249, 252–53, 678 P.2d 41, 44–45 (1984); *Owen v. Burcham,* 100 Idaho 441, 447, 599 P.2d 1012, 1018 (1979). "Such a motion should not be granted if there is substantial evidence to justify submitting the case to the jury." *Stephens,* at 253, 678 P.2d at 45. Thus, our standard of review for a directed verdict requires us to "review the record of the trial below and draw all inferences from the evidence in a light most favorable to the non-moving party to determine if there was substantial evidence to justify submitting the case to the jury." *Quick v. Crane,* 111 Idaho 759, 764, 727 P.2d 1187, 1192 (1986). While De Los Santos asks us on appeal to give her the benefit of those inferences, in reality her appeal focuses not on the directed verdict ruling but rather on the underlying evidentiary rulings made by the trial court. Her argument is that if the excluded evidence had been allowed in, and she was permitted the inferences favorable to her, the directed verdict would not have been granted. Thus our standard of review here, when reviewing a trial court decision on the relevancy of evidence, is free review. *State v. Raudebaugh,* 124 Idaho 758, 766, 864 P.2d 596, 604 (1993).

## IV.

### ANALYSIS

**A. The district court correctly disallowed evidence of sexual harassment not directly related to this case**

■ De Los Santos contends that the district court erred in excluding certain circumstantial evidence regarding her termination. At trial, De Los Santos offered evidence that other female co-workers had been sexually harassed. Specifically, she offered the testimony of her sister, Sonya De Los Santos, who testified that a different supervisor at Simplot had sexually harassed her, and that nothing had been done after she notified Puga about the conduct. De Los Santos argued that this evidence was relevant to show that Simplot would not do anything about a sexual harassment claim. The trial court, after listening to the relevancy arguments, ruled that the testimony was irrelevant. We agree.

The trial court correctly refused to hold a mini-trial to determine whether Simplot reacted to Sonya De Los Santos' complaint. An examination into this testimony would simply not be relevant to the appellant's case. The trial court specifically stated:

My problem is with the connection, with the linkage of the subject matter. Extraneous episodes of sexual harassment, unrelated charges of sexual harassment, unrelated proceedings involving sexual harassment that are not related to Ms. De Los Santos' situation are, on the surface, not relevant because you have alleged in this matter that it was *quid pro quo,* that was instigated by Joe Vasquez.

The trial court correctly found that the testimony did not tend to prove any element of De Los Santos' case. Even assuming this is proof that Simplot is indifferent to sexual

harassment complaints, it is not relevant to the cause of action as plead. In a *quid pro quo* discrimination case De Los Santos must prove that Puga fired her, at least in part, as a result of her failure to grant sexual favors to Vasquez. Thus, any alleged inaction by Simplot in other cases of sexual harassment simply does not relate to her cause of action. We therefore find no error by the trial court in excluding the proffered testimony.

**B. The district court correctly disallowed evidence of hostile working conditions**

■ De Los Santos offered evidence of a hostile work environment at the Simplot plant. After listening to an offer of proof, the trial court ruled that the evidence was irrelevant to this case, and was more prejudicial than probative. On appeal, De Los Santos argues that evidence of the aura of sexual harassment at Simplot should have been admitted. She cites a number of instances where Puga or Vasquez stared at women or joked about them, made sexual remarks toward women and made unwanted sexual advances toward women at the plant.

■ Before analyzing the relevance of the offered evidence, it is important to distinguish between a *quid pro quo* discrimination case, which was asserted by De Los Santos, and an hostile working environment discrimination case.

> Quid pro quo harassment obtains "when a supervisor conditions the granting of an economic or other job benefit upon the receipt of sexual favors from a subordinate, *or* punishes that subordinate for refusing to comply." *Lipsett,* 864 F.2d at 897 (emphasis added). It is the essence of *quid pro quo* harassment that the employee "was subject[ed] to unwelcome advances by a supervisor ... and ... her reaction to these advances affected tangible aspects of ... her compensation, terms, conditions or privileges of employment...." *Id.* at 898. "In rebuttal, the defendant may show that the behavior complained of either did not take place or that it did not affect a tangible aspect of the plaintiff's employment...." *Id.*

*Chamberlin v. 101 Realty, Inc.,* 915 F.2d 777, 783 (1st Cir.1990) (quoting *Lipsett v. Univer-*

*sity of Puerto Rico,* 864 F.2d 881, 897 (1st Cir.1988)). The prima facie case for a hostile working environment requires:

(1) that the plaintiff was subjected to sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature,

(2) that this conduct was unwelcome, and

(3) that the conduct was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.

*Ellison v. Brady,* 924 F.2d 872, 875–76 (9th Cir.1991). While the first two elements of the causes of action are similar, the hostile working environment case requires the additional elements of pervasive conduct and an abusive working environment. De Los Santos did not ever allege either of those two elements and clearly fit her complaint within the requirements of a *quid pro quo* case.

The trial court admitted all evidence about comments and jokes made by Vasquez and Puga directly to De Los Santos. The trial judge admitted this evidence because it was background evidence leading up to the alleged sexual assault. The trial court correctly excluded the other evidence of a hostile work environment because it did not relate to the appellant's case. While admittedly Vasquez and Puga's conduct and comments are reprehensible, if they indeed occurred, De Los Santos has failed to demonstrate any connection between those acts and the reason she was terminated. She may very well have succeeded in proving that there was pervasive conduct at the Simplot plant which created an abusive working environment but unfortunately, that is not related to the cause of action she pursued. Therefore, testimony about actions which contributed to a hostile work environment was properly excluded by the trial court because these acts were not relevant to De Los Santos' cause of action.

**C. The district court correctly excluded evidence of a relationship between Vasquez and Puga**

■ De Los Santos argues that evidence that Puga and Vasquez were friends should have been admitted so the jury could infer

that Puga would fire De Los Santos in order to protect Vasquez. The district court excluded the evidence finding it was not relevant, and was more prejudicial than probative. De Los Santos' argument at trial as to why the evidence was relevant involved several inferences. She argued that evidence of their friendship should be admitted in order to infer that Puga would want to protect Vasquez. The jury could then infer that Puga would want to protect Vasquez against a complaint of sexual assault. From that, the jury was to infer that Vasquez did indeed convince Puga to fire De Los Santos in order to get back at De Los Santos or to protect Vasquez from harassment charges.

The trial court was correct in excluding the evidence because it was irrelevant. Again, De Los Santos failed to make any connection between the evidence offered and her cause of action. While she would have the trial court make assumptions about what this evidence would prove, it would take a great "leap of faith" to conclude that because Vasquez and Puga were friends, De Los Santos was terminated. There must be some point at which the court draws the line and concludes that the proffered evidence simply does not have "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." I.R.E. 401. There was simply no evidence offered that would even remotely permit an inference that Puga terminated De Los Santos because of his friendship with Vasquez. Absent this showing, the trial court correctly ruled that the evidence was irrelevant.

### D. The district court did not rule on the permissible reasons for termination

De Los Santos argues that the trial court erred in ruling that a company could terminate an employee if the case involved both good cause and discriminatory reasons. The trial court did say that "the major hurdle I see is that the employer can say, even if this episode happened, we still had just cause to fire her." De Los Santos singles out this sentence and argues that the trial court found this to be a mixed motive case. She

asserts that the trial court should have concluded, as some courts have, that only one discriminatory reason need be found in order to allow recovery, irrespective of whether there are other non-discriminatory motivations for termination. *See, e.g., Kauffman v. Sidereal Corp.,* 695 F.2d 343 (9th Cir.1982).

We have stated that the appellant has the burden of showing reversible error on appeal. *Carpenter v. Double R Cattle Co.,* 108 Idaho 602, 604, 701 P.2d 222, 224 (1985). In the present case, De Los Santos has completely mischaracterized the trial court's rulings and has failed to meet her burden of showing error on appeal. The trial court never reached the question of whether discrimination could be one reason for the firing, or had to be a reason, because it did not find any discrimination which resulted in termination. Because there was no discrimination resulting in termination, there was absolutely no reason to address the question of whether it had to be the sole reason, just one reason or the main reason for her termination.

The court expressly stated throughout the trial that even if De Los Santos proved a sexual assault took place, she had not shown it was in any way connected to her firing. Thus, the trial court had before it the appellant's accusation of sexual assault, which even taken as true was not tied by the evidence to her firing. She failed to show that the incident had anything to do with her termination, and she therefore failed to prove her prima facie case. Thus De Los Santos is in error in arguing that the district court ruled that Simplot may terminate an employee when sexual discrimination is one of the motivations for that termination.

### E. The district court correctly excluded evidence relating to other employees

■ De Los Santos attempted to offer evidence that other employees had left work early, and Simplot plant supervisors would sometimes void the "occurrences" which were given out as punishment for this violation. This evidence was speculative and irrelevant to this cause of action. De Los Santos had not been issued an occurrence for leaving early. Nevertheless she argues that

*if she had been given an occurrence, Puga would not have voided it for her because of the alleged assault by his friend Vasquez. The district court correctly refused to permit the jury to infer that the non-issuance of an occurrence or the voiding of an occurrence had some bearing on whether De Los Santos was being discriminated against.*

■ The appellant also attempted to introduce evidence that other employees had violated work rules and received a lesser penalty. Again, this testimony had nothing to do with the circumstances of this particular case and why De Los Santos was terminated. None of the evidence offered involved actions by employees which would be similar to a time keeper falsifying time records. Therefore, the trial court correctly found the testimony was irrelevant.

The appellant argues that all of the above evidence is evidence of disparate treatment, and that this type of evidence has been admitted in federal cases. This is true. However, the cases she cites are all *disparate impact* cases. These are cases where a plaintiff brings suit claiming that persons of a different race or sex are being treated differently than those of the plaintiff's race or sex. *See Bowles v. Keating,* 100 Idaho 808, 606 P.2d 458 (1979). De Los Santos has not brought a disparate impact case; therefore, she cannot offer evidence of disparate treatment unless she shows it is somehow relevant to the cause of action she actually brought. In this case, she failed to do so.

**F. There is no ruling on emotional distress from which De Los Santos can appeal**

■ De Los Santos contends on appeal that the district court erred when it ruled that emotional distress was not an element of damage in this case. We decline to address this issue because there is no ruling in the record on emotional distress as an element of damages in this type of case. De

Los Santos was given wide latitude to testify at length on her emotional reactions to the events leading up to and following her termination, which testimony was neither objected to nor excluded by the trial court. While there was a lengthy colloquy between court and counsel on emotional damages, the trial court specifically took under advisement how evidence of emotional distress would be handled. There was no subsequent ruling in the record by the district court on this issue.[1] We will not review an alleged error on appeal unless the record discloses an adverse ruling which forms the basis for the assignment of error. *State v. Grube,* 126 Idaho 377, 387, 883 P.2d 1069, 1079 (1994); *Dunclick, Inc. v. Utah–Idaho Concrete Pipe Co.,* 77 Idaho 499, 502, 295 P.2d 700, 702 (1956).

**G. Attorney fees on appeal**

■ Pursuant to I.A.R. 11.1, 40 and 41, Simplot has requested attorney fees. While there are certainly compelling arguments for awarding fees, due to the sparse case law in Idaho involving sexual discrimination issues, we cannot say that this appeal was brought for improper purposes or in bad faith.

**V.**

**CONCLUSION**

The decision of the district court is affirmed. We award costs on appeal to the respondent.

McDEVITT, C.J., SILAK, J., TRANSTRUM, J. (Pro Tem.) and HART, J. (Pro Tem.) concur.

---

1. In her brief De Los Santos states that "[T]he court disallowed Ms. De Los Santos' proffered evidence concerning the emotional distress this termination has caused her." The brief then cites to seven pages in the transcript. On some of the cited pages there is no discussion whatsoever about emotional distress, while on the remaining cited pages there is just a general discussion about emotional distress without any ruling by the trial court. We find no specific ruling by the trial court on this issue.