915 P.2d 724

**Martha PATERSON, Plaintiff–Respondent,**

v.

**STATE of Idaho, and The Department of Administration, State of Idaho; and James Skinner, an individual, Defendants–Appellants.**

**No. 21430.**

Supreme Court of Idaho, Boise, December 1995 Term.

April 25, 1996.

Alan G. Lance, Attorney General; Hall, Farley, Oberrecht & Blanton, Boise, for appellants. Candy W. Dale argued.

Risch, Goss & Insinger, Boise, for respondent. R. John Insinger argued.

SILAK, Justice.

This is an appeal from a jury verdict and judgment entered against the state of Idaho and James Skinner (collectively appellants). The jury found that James Skinner (Skinner) willfully violated the Idaho Human Rights Act (IHRA) seventy-five times and that the state of Idaho willfully violated IHRA on ninety-eight occasions. The appellants alleged numerous errors with the district court's denial of their post-trial motions. We affirm in part and reverse and remand in part.

## I.

### FACTS AND PROCEDURAL BACKGROUND

Martha Paterson (Paterson) worked as an information specialist for the state of Idaho, Bureau of Supplies, Department of Administration, Division of Purchasing. Skinner was her immediate supervisor. During Paterson's probationary period, Skinner told Paterson that he expected his employees not to be offended by the use of crude language, that he had the power to fire people at will, and that he was willing to fire anybody who did not "fit in."

During Paterson's employment, crude language and off-color humor pervaded the workplace at the Bureau of Supplies, a fact known to upper management. In fact, Division Administrator Colleen Grant stated that she allowed such behavior to continue because Skinner's management style appeared to be working and because she noticed no discomfort on the part of the employees. Out of a desire to "fit in," Paterson "occasionally" used crude language and engaged in discussions of a sexual nature.

However, the type of comments made by Skinner were more offensive and degrading than the crude language freely used in Paterson's workplace. Skinner constantly subjected Paterson and other female employees to sexually charged remarks and sexual innuendo. At trial, Paterson detailed a minimum of 275 individual examples of sexually charged comments directed at her, as well as sexually derogatory comments about other female employees. Skinner denied making nearly all of the remarks Paterson attributed to him. As to the remaining comments, he admitted to commonly using the phrase "my memory is as long as my dick," but stated that the other comments were taken out of context.

Out of fear that she would be fired, Paterson did not complain to either Skinner or

Grant. Instead, she placed her name on the lateral transfer register for an information specialist position with another state agency. She also sought out employment in the private sector.

In early 1989, one of Paterson's female co-employees filed a grievance against Skinner and the Bureau of Supplies alleging sexual harassment. After an interview with the deputy attorney general investigating the matter, Paterson decided to file a sexual harassment complaint against Skinner. Following her filing, the state of Idaho placed Paterson on a paid administrative leave while it investigated her complaint.

The director of the Department of Administration determined that sexual harassment had occurred and ordered Skinner to be suspended without pay for three days. However, on appeal by Skinner, the Department of Administration initiated a second investigation which concluded that there was insufficient proof to sustain a probable cause finding of sexual harassment. As a result, no disciplinary action was undertaken against Skinner. Colleen Grant received a verbal reprimand for allowing such conduct to occur in the Bureau of Supplies.

Upon completion of the initial investigation, some three weeks after Paterson was placed on administrative leave, Grant informed her that she could return to work. Paterson was transferred to the Central Records Management for the Bureau of Printing Services, located in the basement of the state employee parking garage. Paterson's pay grade and employment classification remained unchanged. Her new assignment was to publicize and prepare work reports regarding the potential opening of a records retention center as well as various other work projects, to be assigned. Her new office was not equipped with either a telephone or typewriter, equipment necessary to her assignment.

Over the next several weeks, Grant and Paterson met frequently to discuss Paterson's apparent lack of work at her new position. Paterson became frustrated that her skills and training were not being properly utilized and she felt that she was being punished for filing a grievance against Skinner.

After a month in this new position and on her own initiative, Paterson applied for and obtained a position as an information specialist with the Idaho Department of Water Resources.

Paterson filed suit in district court alleging, among other things, violations of the IHRA, I.C. § 67–5901, *et seq.* Pursuant to I.C. § 67–5908(3)(e), Paterson sought to amend her complaint to add a claim for punitive damages. Although the court granted her motion to amend, Paterson never filed an amended complaint containing a prayer for punitive damages.

Upon the completion of the evidence, both sides discussed the language to be used in the jury instructions. Counsel for the defendants stated, "[s]ince I don't have to specifically preserve any rights, I won't here, except that I do have some comments that might be helpful." Counsel and the judge then continued to modify the wording of the jury instructions, but no formal objection to any instruction in particular was ever raised.

The jury returned a special verdict awarding Paterson $5,000 in compensatory damages. The jury found that Skinner willfully violated IHRA seventy-five times and imposed a $500 penalty for each violation ($37,500). The jury also found the state of Idaho to have willfully violated IHRA on ninety-eight occasions and assessed a $1,000 penalty for each violation ($98,000). The jury indicated the number of violations and amount of punitives awarded against the state of Idaho included the number of violations and amount awarded against Skinner.

The district court then entered separate judgments against Skinner and the state of Idaho. Judgment against Skinner was entered for $42,500, $5,000 of which was joint and several with the state of Idaho. Judgment against the state of Idaho for $103,000 was also entered. The defendants moved to alter or amend the judgment against Skinner. The defendants also filed a motion for a new trial, or in the alternative a motion to alter or amend the judgment or, in the alternative, a judgment notwithstanding the ver-

dict. The district court denied all post-trial motions.

Skinner and the state of Idaho appealed.

## II.

## ISSUES ON APPEAL

A. Whether plaintiff's hostile work environment claim could establish more than one violation of I.C. § 67–5908(3)(e).

B. Whether the district court incorrectly instructed the jury on the elements of a hostile work environment and the sufficiency of the evidence of unwelcome conduct.

C. Whether punitive damages should have been awarded against defendants.

D. Whether there was sufficient evidence to support the jury's determination of the amount and allocation of the number of willful violations of I.C. § 67–5909(1).

E. Whether the district court erred in holding that the punitive damage award was not disproportionate to the compensatory damage award.

F. Whether there was sufficient evidence to support the jury's award of compensatory damages.

G. Whether the judgment against Skinner should be altered or amended.

## III.

## STANDARD OF REVIEW

■■■ The Supreme Court reviews a motion for judgment notwithstanding the verdict (j.n.o.v.) just as the trial court would and gives no special deference to the trial court's conclusions. *Quick v. Crane,* 111 Idaho 759, 764, 727 P.2d 1187, 1192 (1986). The moving party admits the truth of all evidence and all reasonable inferences drawn from that evidence are construed in a light most favorable to the nonmoving party. *Id.* On motion for j.n.o.v., the Court does not weigh the evidence or the credibility of the witnesses, but seeks to determine if there was substantial evidence to justify the submission of the case

to the jury. *Id.; Lubcke v. Boise City/Ada County Hous. Auth.,* 124 Idaho 450, 455–56, 860 P.2d 653, 658–59 (1993).

■■■ However, review of a motion for a new trial and/or a motion for a remittitur of damages is governed by a wholly different and more deferential standard. *Quick,* 111 Idaho at 766, 727 P.2d at 1194. The trial court is permitted to weigh the evidence and the credibility of the witnesses to determine if the verdict is in accord with its own assessment as to the clear weight of the evidence. *Id.* Accordingly, the Supreme Court will not reverse the trial court's decision in this regard absent proof that the trial court manifestly abused the wide discretion granted to it. *Id.,* at 770, 727 P.2d at 1198; *Jones v. Panhandle Distributors, Inc.,* 117 Idaho 750, 755, 792 P.2d 315, 320 (1990).

## IV.

## ANALYSIS

A. **A Hostile Work Environment Claim Cannot Establish More Than One Violation Of I.C. § 67–5908(3)(e).**

IHRA seeks to secure for all individuals freedom from discrimination in employment because of, *inter alia,* sex. I.C. § 67–5901(2). IHRA makes it a "prohibited act" to discriminate against an individual on the basis of sex with respect to the "terms, conditions or privileges of employment." I.C. § 67–5909(1). Should the court find "that unlawful discrimination has occurred," it may, among other remedies, enter "[a]n order for punitive damages, not to exceed one thousand dollars ($1,000) for each willful violation of this chapter." I.C. § 67–5908(3)(e). Paterson noted that while I.C. § 67–5909 references "prohibited acts," I.C. § 67–5908 speaks of "willful violations." Thus, Paterson argued, and the district court agreed, that this differing language should be interpreted so as to allow for every willful act which is a factor in creating a hostile work environment to be a "willful violation of the chapter" for which a penalty may be assessed. We disagree.

Paterson's interpretation ignores the very nature of a hostile work environment claim. As we noted in *De Los Santos v. J.R. Simplot Co., Inc.,* 126 Idaho 963, 895 P.2d 564 (1995), the prima facie case for a hostile work environment requires: "(1) that the plaintiff was subjected to sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature, (2) that this conduct was unwelcome, and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *De Los Santos,* 126 Idaho at 967, 895 P.2d at 568. In order to show that a work environment was sufficiently hostile, a plaintiff must show the occurrence of numerous improper acts which establish a pattern of conduct sufficiently severe or pervasive to alter the conditions of employment. *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993).

According to these relevant authorities, the creation of an overall hostile work environment is a prohibited act, not the individual incidents which comprise the hostile work environment cause of action. Since isolated comments or incidents cannot form the basis for a hostile work environment cause of action, each comment or incident cannot amount to an individual "violation" for the purposes of I.C. § 67–5908(3)(e). In this case, all of Skinner's egregious conduct could have constituted only one "prohibited act" and thus only one "willful violation" for which a maximum award of $1,000 could have been assessed. Accordingly, we reverse the district court's decision in this regard.

### B. The District Court Properly Defined Unwelcome Conduct.

Appellants contend that the jury instruction's definition of unwelcome conduct misstated the law of sexual harassment. In light of Paterson's active engagement in the conduct at issue, they argue the instruction improperly allowed the jury to excuse her failure to indicate that the conduct was unwelcome due to a well-founded fear of retaliation.

This Court reviews challenges to jury instructions to see if the instructions, taken as a whole, fairly and accurately presented the issues and stated the law. So long as the instructions, when taken as a whole, do not mislead or prejudice a party, an erroneous instruction will not be deemed reversible error. *Sherwood v. Carter,* 119 Idaho 246, 256, 805 P.2d 452, 462 (1991).

The United States Supreme Court recognized that "the question whether particular conduct was indeed unwelcome presents difficult problems of proof and turns largely on credibility determinations committed to the trier of fact...." *Meritor Sav. Bank v. Vinson,* 477 U.S. 57, 68, 106 S.Ct. 2399, 2406, 91 L.Ed.2d 49 (1986). In *Meritor,* the Supreme Court addressed the admissibility of testimony regarding the complainant's sexually provocative speech and dress. The Court noted that such testimony could be relevant in determining whether the complainant found the particular sexual advances unwelcome. In particular, the Court stated that the "trier of fact must determine the existence of sexual harassment in light of 'the record as a whole' and 'the totality of the circumstances, such as the nature of the sexual advances and the context in which the alleged incidents occurred.'" *Meritor,* 477 U.S. at 69, 106 S.Ct. at 2406.

The relevant instruction tracked this language, stating that in determining whether the conduct was unwelcome by Paterson, the jury was to consider "the totality of the circumstances surrounding the alleged conduct and the context in which it occurred." The instruction also told the jury to consider whether a reasonable person may have failed to indicate its unwelcomeness out of a "well-founded fear of retaliation." This portion simply indicated a particular fact in issue. Thus, we find no error in this instruction and conclude that the instructions fairly and accurately presented the issue and stated the law.

We also reject the appellants' contention that insufficient evidence supported the jury's finding that the conduct was unwelcomed by Paterson. The judge and jury listened to Paterson's testimony regarding Skinner's threat to fire anyone who did not

"fit in," that Skinner would not tolerate employees who were offended by crude and vulgar language, and that she considered Skinner's conduct unwelcome. The jury endured testimony which specifically detailed the egregious conduct, including the offensive words themselves. The jury also heard Skinner's denials as to the vast majority of the alleged conduct and testimony from Skinner and others alleging Paterson's active engagement in the conduct at issue. At the conclusion of the evidence, the jury determined that under the totality of the circumstances, the comments and their context demonstrated that the conduct was unwelcome by Paterson. Because a finding of unwelcomeness largely turns upon credibility determinations made by the trier-of-fact, we find that sufficient, competent evidence supported a finding of unwelcomeness.

### C. The District Court Erred In Holding Skinner Individually Liable For Damages Under IHRA.

After the jury determined that Skinner willfully violated the IHRA on seventy-five occasions, the district court entered judgment against Skinner for $42,500, $5,000 of which was joint and several with the State of Idaho. Appellants argue that judgment against Skinner is barred by I.C. § 6-903, or in the alternative that there is no personal liability under IHRA. Due to a recent decision by this Court interpreting individual liability under IHRA, we vacate the entry of judgment against Skinner.

■ Initially, appellants argue that I.C. § 6-903 bars the entry of judgment against Skinner. I.C. § 6-903(b)(i) states that "[a] governmental entity shall ... be responsible for the payment of any judgment on any claim or civil lawsuit against an employee for money damages arising out of any act or omission within the course and scope of his employment...." However, this issue need not be reached in light of our decision in *Foster v. Shore Club Lodge,* 127 Idaho 921, 908 P.2d 1228 (1995). In *Foster,* this Court agreed with the rationale of *Miller v. Maxwell's International, Inc.,* 991 F.2d 583 (9th Cir.1993), and found no individual liability of an employee under Title VII. *Foster,* 127

Idaho at 925, 908 P.2d at 1232. In addition, this Court also held there is no individual liability of an employee under IHRA. *Id.,* at 926, 908 P.2d at 1233. For this reason, we vacate the district court's entry of judgment against Skinner.

### D. The Award Of Punitive Damages Pursuant To I.C. § 67-5908(3) Was Appropriate.

The appellants raise numerous challenges to the award of punitive damages. They argue the award is barred (1) by Paterson's failure to file an amended complaint containing a prayer for punitive damages; (2) by I.C. § 6-918; and (3) by insufficient evidence of "willfulness." As to these arguments we find them to be without merit. Because we hold that a hostile work environment claim can only be the basis for one violation we need not address appellants' arguments concerning the sufficiency of the evidence supporting the amount and allocation of violations. Nor need we decide if the punitive award is disproportionate to the compensatory award.

### 1. Paterson's failure to file an amended complaint does not bar the award of punitive damages.

Appellants argue that Paterson's failure to follow the procedure in I.C. § 6-1604 and file an amended complaint containing a prayer for punitive damages bars their recovery. We disagree.

■ In accordance with I.C. § 6-1604, Paterson's original complaint did not contain a prayer for punitive damages. Paterson subsequently motioned to amend her complaint to add a prayer for punitive damages pursuant to I.C. § 67-5908(3)(e). The appellants filed an objection to Paterson's motion to amend. The district court made the requisite findings under I.C. § 6-1604, findings which the appellants do not contest on appeal, and granted Paterson's motion to amend her complaint. In light of this, Paterson's simple failure to file the amended complaint with the court should not bar her recovery.

Moreover, this Court has held that when a theory is fully tried by the parties, I.R.C.P 15(b) allows a court to base its decision on a theory not pleaded "and deem the pleadings amended accordingly...." *M.K. Transport, Inc. v. Grover*, 101 Idaho 345, 349, 612 P.2d 1192, 1196 (1980); *see also, Mikesell v. Newworld Development Corp.*, 122 Idaho 868, 878, 840 P.2d 1090, 1100 (Ct.App.1992) (due to the failure to object to non-compliance with I.C. § 1604(2), and because the issue was fully treated by the parties, the district court correctly treated the issue as properly pled). Both Paterson and the appellants briefed the court in this regard and the district court allowed the issue to be tried before the jury. Thus, the issue of a punitive damages award was fully tried by the parties and the district court correctly treated the matter as properly pled. Accordingly, we reject appellants' argument in this regard.

## 2. Punitive damages under IHRA are not barred by I.C. § 6–918.

■■■■ Appellants also argue that I.C. § 6–918 bars an award of punitive damages against the state of Idaho and James Skinner. That code section states that "[g]overnmental entities and their employees shall not be liable for punitive damages on any claim allowed under the provisions of this act." The district court noted that Paterson's claim was not brought under the more general Tort Claims Act, but rather under the more specific IHRA. IHRA prohibits an "employer" from discriminating against an individual on the basis of sex. I.C. § 67–5909(1). "Employer" is defined to include "any agency of or any governmental entity within the state; and any agent of such employer." I.C. § 67–5902(6)(b) & (c). A basic tenet of statutory construction is that when two statutes conflict, the more specific statute controls over the more general. *Ausman v. State*, 124 Idaho 839, 842, 864 P.2d 1126, 1129 (1993). In the absence of language in IHRA limiting liability against the State, the more specific imposition of liability under IHRA controls over the more general immunity grant contained in I.C. § 6–918. Therefore, we find that I.C. § 6–918 does not preclude the entry of a punitive damages award against the state of Idaho.

## 3. Sufficient evidence supported a finding of willfulness.

■■■■ Appellants contend that the jury instructions did not direct the jury to make a separate inquiry into willfulness after they found that the appellants violated IHRA. On the contrary, we find the instructions did direct the jury to make a separate inquiry into willfulness once it had found in favor of Paterson. The instruction defined willfulness as "acting intentionally and recklessly with wanton disregard for the rights of the employee." Thus, the appellants' contention that the instructions did not direct the jury to make a separate inquiry into the willfulness of the violations lacks merit.

■■■■ Appellants also contend that insufficient evidence supported the jury's finding of a willful violation since Paterson presented no evidence that Skinner and the state of Idaho acted with malice or reckless indifference. The jury heard Paterson's testimony regarding a "minimum" of 275 separate instances of egregious conduct allegedly committed by Skinner. By its verdict, the jury found her testimony credible and found that Skinner and the state of Idaho acted intentionally or recklessly acted on ninety-eight occasions. We find the evidence presented to be sufficient to support the jury's finding of willfulness.

## E. The District Court Did Not Err By Refusing To Remit The Award Of Compensatory Damages.

Appellants allege that since the district court dismissed Paterson's claim for intentional infliction of emotional distress resulting from the hostile work environment, the court erred in allowing the jury to award Paterson $5,000 in compensatory damages. Since Paterson suffered no economic loss, they contend the award is improperly based on her sole statements as to her embarrassment and humiliation. As a result, appellants claim insufficient evidence supported the award of $5,000.

■■■■ The appellants' assertion that expert testimony must be provided in order for Pa-

terson to recover for her embarrassment and humiliation is incorrect. Again, we note that this is largely a credibility determination best left to the trier of fact. Paterson alleged that Skinner's conduct embarrassed and humiliated her. By its verdict, the jury found her testimony to be credible and awarded her reasonable damages. In its memorandum, the district court also found that a review of the evidence supported "the conclusion that Paterson suffered the compensatory damages awarded to her."

The fact that Paterson's claim may not have risen to the level necessary to meet the legal elements required for an intentional infliction of emotional distress cause of action does not block her recovery for the embarrassment and humiliation she suffered as a result of her work environment. In fact, the instructions directed the jury, upon a finding of liability, to award Paterson compensatory damages for "mental pain and suffering, including mortification, humiliation, and embarrassment resulting from the hostile working environment." The appellants do not challenge the giving of this instruction. As a result, we affirm the district court's award of compensatory damages to Paterson in the amount of $5,000.

### F. Attorney Fees And Costs.

The state of Idaho and Skinner request that the Court award them costs on appeal. Since we vacate the judgment against Skinner, we award Skinner costs on appeal.

### V.

### CONCLUSION

Despite the fact that Paterson testified to a minimum of 275 instances of harassing conduct, her hostile work environment claim could form the basis for only one violation of the IHRA. The district court's failure to alter the judgment was error and we reverse. We also vacate the entry of judgment against Skinner.

Nonetheless, we find that sufficient, competent evidence supported the jury's finding of a willful violation of IHRA, as well as the award of compensatory damages. We also find that the jury instructions correctly stated the law and fully presented the issues, specifically in their definitions of unwelcome conduct and willfulness. The punitive damages award is not barred by Paterson's failure to file an amended complaint, nor by any of the other arguments raised by the appellants.

Thus, judgment should only be entered against the state of Idaho for $6,000, $5,000 in compensatory damages and $1,000 as representing the punitive award under I.C. § 67–5908. This case is remanded for entry of judgment in accordance with this opinion.

Costs on appeal to Skinner.

McDEVITT, C.J., and JOHNSON, TROUT and SCHROEDER, JJ. concur.